FILED
2012 Aug-31  PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON DOUGLAS THRASHER, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| vs. | ) | **1:11-cv-2817-AKK** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Shannon Douglas Thrasher ("Thrasher") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Thrasher filed his applications for Title II disability insurance benefits and

Title XVI Supplemental Security Income on January 23, 2008, alleging a disability onset date of October 11, 2007.  (R. 130-34).  Thrasher alleges that he is unable to work due to blindness in his right eye, rheumatoid arthritis, and high blood pressure.  (R. 151).  After the SSA denied his applications on March 14, 2008, (R. 90-94), Thrasher requested a hearing, (R. 40), which he received on January 21, 2010, (R. 42).  At the time of the hearing, Thrasher was 36 years old, (R. 49), had a high school diploma, *id*., and past relevant work that included heavy, semi-skilled work as a tree trimmer and sign erector, medium, semi-skilled work as a heavy equipment operator, molding machine operator, and delivery driver, and medium, unskilled work as a wire coating machine operator.  (R. 72).  Thrasher has not engaged in substantial gainful activity since October 11, 2007.  (R. 21, 151).

The ALJ denied Thrasher's claims on February 19, 2010, (R. 16), which became the final decision of the Commissioner when the Appeals Council refused to grant review on July 9, 2011, (R. 1-5).  Thrasher then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

The ALJ initially determined that Thrasher had not engaged in substantial gainful activity since his alleged onset date, and therefore met Step One.  (R. 21). Next, the ALJ acknowledged that Thrasher's severe impairments of pan-uveitis, vasculitis in the left eye, interstitial lung disease (chronic obstructive pulmonary disease), osteopenia of the lumbosacral spine, lumbosacral spondylosis without myelopathy, degenerative joint disease of the knees, arthritis, and hypertension met Step Two.  (R. 22).  The ALJ then proceeded to the next step and found that Thrasher did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id*.  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Thrasher

retains the residual functional capacity [RFC] to perform light work [ ]. Specifically, the *full range of* light work involves lifting no more than 20 pounds with frequent lifting or carrying of objects up to 10 pounds, standing or walking up to 6 hours in an 8 hour day, and sitting up to 6 hours in an 8-hour day; with, generally, occasional stooping, some pushing and pulling of arm and/or leg controls, and the gross use of hands to grasp, hold and/or turn objects. The undersigned further finds, however, that the full range of light work that can be performed by [Thrasher] is reduced by the following functional limitations: he is limited to work which involves, exertionally, sitting for no more than 1 hour at one time, up to 4 hours in an eight hour day; standing for no more than 45 minutes at one time, up to 2 hours in an 8 hour day; walking for no more than 30 minutes at one time, up to 2 hours in an eight hour day; no more than frequent lifting or carrying up to 10 pounds; and no more than occasional lifting or carrying up to 20 pounds. With regard to non-exertional limitations, he is limited to work which does not involve climbing of ladders or scaffolds; which does not involve kneeling, crouching, or crawling; and which does not involve working around unprotected heights. He is limited to work which does not involve more than frequent reaching overhead; no more than frequent climbing of stairs and ramps; and no more than occasional balancing, stooping, driving of automotive equipment, or exposure to marked changes in temperature or humidity. However, the undersigned is of the opinion that [Thrasher] is able to continuously use his hands for repetitive action such as simple grasping, for pushing and pulling of arm controls, and for fine manipulation. He can continuously use his feet for repetitive movement such as pushing and pulling of leg controls and work around moving machinery. The undersigned further finds that [Thrasher's] functional capacity is limited due to a moderate degree of pain and that, as a result of his blindness in the right eye, he is limited to work which does not require the use of binocular vision or peripheral vision and which does not involve activities which would be considered dangerous to persons with monocular vision.

(R. 23) (emphasis in original).

Regarding Thrasher's treating physician Dr. Russell Ulrich's ("Dr. Ulrich")

opinion that Thrasher is disabled, the ALJ found Dr. Ulrich not credible because

he diagnosed Thrasher with osteoporosis and lumbosacral spondylosis without any

supporting objective laboratory testing.  (R. 26-27).  Accordingly, the ALJ held

that

> Dr. Ulrich's opinions regarding [Thrasher's] limitations arising out of
> his musculoskeletal impairments are, apparently, based on nothing
> more than [Thrasher's] self-reported symptomology. . . .  For these
> reasons, the undersigned rejects the opinions of Dr. Ulrich as
> expressed in his reports of February 22, 2008 and June 8, 2008 and
> assigns them no significant weight to the extent that they are
> inconsistent with the [RFC] assessment herein.

(R. 30-31).  As it relates to consulting physician Dr. Kishin Gehi ("Dr. Gehi"), the

ALJ concluded that

> based upon Dr. Gehi's physical examination observations [ ] and the
> available objective evidence, [Thrasher] can walk for at least two
> hours in an 8 hour day and sit/stand/walk for a total of at least 8 hours
> a day.  I give substantial weight to Dr. Gehi's assessment that reflects
> [Thrasher] can perform a range of light work activity.  His opinion is
> well supported by his own clinical examinations and testing [ ] and is
> generally consistent with the record as a whole.

(R. 32). In light of Thrasher's RFC and exertional limitations, the ALJ held that

Thrasher was "unable to perform any past relevant work."  (R. 17).  The ALJ then

moved on to Step Five where he considered Thrasher's age, education, experience,

and RFC, and determined that "jobs . . . exist in significant numbers in the national

economy that [Thrasher] can perform."  (R. 18).  As a result, the ALJ answered

Step Five in the negative, and determined that Thrasher is not disabled.  (R. 19);

*see also McDaniel*, 800 F.2d at 1030.  It is this finding that Thrasher challenges.

## V.  Analysis

Thrasher asserts that the ALJ committed reversible error by failing to apply

the proper weight to the opinions of his treating physician Dr. Ulrich and the State

Agency consultant Dr. Gehi.  Doc. 8 at 11-15.  For the reasons stated below, this

court finds that the ALJ's opinion is supported by substantial evidence.

### A.    Dr. Russell Ulrich

To address Thrasher's contention that the ALJ improperly rejected Dr.

Ulrich's opinion, doc. 8 at 11-13, the court will review Dr. Ulrich's treatment

notes as they relate to Thrasher's back and knee pain.  In that regard, the treatment

records reveal that Thrasher visited Dr. Ulrich on December 8, 2003, for

evaluation and treatment for pain in his lower back and between his shoulder

blades that was aggravated by cold weather.  (R. 329).  Thrasher had a tender back

at L5-S1, normal straight leg raises and deep tendon reflexes, and Dr. Ulrich

prescribed Lorcet for pain.  *Id*.

Two months later, on February 6, 2004, Thrasher presented to Dr. Ulrich

again with low back pain.  (R. 328).  Dr. Ulrich made treatment notes that were

identical to his December 2003 notes and prescribed Lorcet again for pain and Naprosyn for muscle spasms.  *Id*.  Thrasher returned to Dr. Ulrich complaining of back and shoulder pain on March 1, 2004, May 27, 2005, and January 23, 2006, but Dr. Ulrich made no other treatment notes related to Thrasher's pain.  (R. 316, 317, 327).

Thrasher's next visit to Dr. Ulrich occurred on July 19, 2006, during which Thrasher complained about "low back pain, knee pain, neck pain," and that his "left leg is numb in the upper thigh."  (R. 312).  Thrasher's neurological system was "within physiological limits" and his extremities had palpable pulses and no edema.  *Id*.  Dr. Ulrich diagnosed Thrasher with meralgia paresthetica and prescribed Lorcet Plus and Neurotonin for pain.  *Id*.

On January 5, 2007, Thrasher visited Dr. Ulrich complaining of knee and back pain.  (R. 308).  Again, Thrasher had a neurological system that was within physiological limits and his extremities had palpable pulses and no edema.  *Id*.  Dr. Ulrich diagnosed Thrasher with arthralgia due primarily to a "fast taper" of Prednisone[1] which "causes a lot of aches and pains."  *Id*.[2]

---

[1]On February 15, 2007, Thrasher received a virectomy of the left eye at Callahan Eye Foundation Hospital and was prescribed the steroid Prednisone.  (R. 250).

[2]On April 6, 2007, Thrasher complained of pain in his right heel and Dr. Ulrich diagnosed plantar fasciitis.  (R. 306).  This diagnosis is unrelated to Dr. Ulrich's opinion that Thrasher is disabled.

Four months later, on May 11, 2007, Dr. Ulrich evaluated Thrasher for back and leg pain and observed that Thrasher had a tender back at L5-S1 and normal straight leg raises.  (R. 304).  An x-ray of Thrasher's lumbar spine revealed "no significant abnormality identified in the lumbar spine," and "4 mm calcific density projected over the right renal outline, possibly related to renal calculus."  (R. 345).

On August 9, 2007, Thrasher received a bone density test that revealed "osteopenia of the lumbar spine," (R. 343), which is characterized by a slight thinning of the bone.  Two weeks later, on August 24, 2007, Dr. Ulrich evaluated Thrasher for "low back pain" that was "going down his legs" and diagnosed Thrasher with low back pain with radiculopathy and possible gout.  (R. 303). Three weeks later, on September 14, 2007, without any supporting medical evidence, Dr. Ulrich noted for the first time that Thrasher suffered from osteoporosis secondary to steroids.  (R. 302).

The next month, on October 19, 2007, although Thrasher primarily complained about gastritis, Dr. Ulrich noted that Thrasher's "paravertebral muscles in the lumbar region are tender.  Normal extension, flexion is decreased about 30%.  Straight leg raising is negative.  Deep tendon reflexes are 2+ knee and ankle jerk."  (R. 300).  Dr. Ulrich diagnosed Thrasher with lumbosacral spondylosis.  *Id*.

Thrasher presented again to Dr. Ulrich on February 4, 2008, complaining of back and knee pain. (R. 298). Dr. Ulrich's examination revealed the same clinical findings as in October 2007 and a diagnosis of lumbosacral spondylosis without myelopathy. That same month, on February 22, 2008, Dr. Ulrich completed a disability determination form where he diagnosed Thrasher with osteopenia due to steroid use, lumbosacral spondylosis without myelopathy, and degenerative joint disease. (R. 296-97).[3]

On June 8, 2008, Dr. Ulrich completed a Physical Capacities Evaluation and opined that Thrasher could (1) lift or carry 5 pounds, sit two hours, and stand one hour during an 8 hour work day, (2) rarely bend, stoop, reach, climb stairs or ladders, balance, or push or pull with arm and leg controls, and (3) occasionally use gross and fine manipulation, operate motor vehicles, and work around hazardous machinery. (R. 418). Dr. Ulrich noted that Thrasher's chronic low back pain would likely cause Thrasher to miss work more than four days each month. *Id*. Lastly, Dr. Ulrich opined that Thrasher's pain (1) would distract him from adequate performance of daily work activities, (2) is greatly increased by

_____

[3]Thrasher visited Dr. Ulrich on several occasions between February 2008 and January 2010, where his chief complaints were gastritis, hypertension, and hypothyroidism. (R. 185, 186, 188, 190, 192, 203, 205, 410, 412, 420). The court does not recount these visits here since they are unrelated to Dr. Ulrich's disability opinion.

physical activity causing distraction or total abandonment of tasks, and (3)

requires prescribed medication that causes side effects expected to be severe and

"limit effectiveness due to distraction, inattention, and drowsiness." (R. 419). It

is these findings from February and June 2008 that form the basis of Thrasher's

disability claim and contention of error.[4]

The ALJ's decision to reject Dr. Ulrich's February 22, 2008, and June 8,

2008, reports is supported by substantial evidence. As a threshold matter, the

court notes that the regulations allow the ALJ to reject a treating physician's

assessment, when, as here, the physician failed to present "relevant evidence to

support an opinion." *See* 20 C.F.R. § 404.1527(d)(2). In that regard, Dr. Ulrich

diagnosed Thrasher with lumbosacral spondylosis without myelopathy although

Thrasher's x-ray revealed no significant abnormalities in his lumbar spine. (R.

345). Moreover, Dr. Ulrich's examinations frequently revealed only tenderness in

Thrasher's lumbosacral region of his back and that Thrasher had normal straight-

leg raises and neurological system tests. Likewise, although Thasher's bone

density test confirmed osteopenia, Dr. Ulrich diagnosed Thrasher with steroid

---

[4]Two years later, on July 2, 2010, Dr. Ulrich evaluated Thrasher for severe knee pain and noted that Thrasher's right knee had approximately 20 ml of effusion and that Celebrex provided no relief. (R. 430). Dr. Ulrich required Thrasher to execute a pain agreement and prescribed Lorcet Plus for pain. *Id.* Finally, on November 2, 2010, Dr. Ulrich opined that Thrasher is "totally and permanently disabled and I see no hope of improvement in his case." (R. 435).

induced osteoporosis, characterized by a loss of bone mass, fractures, loss of

height, and pain.  Finally, Dr. Ulrich determined that Thrasher's pain medication

caused side effects that impeded Thrasher's ability to concentrate without any

treatment notes to support this finding.  The lack of objective medical findings

belie Dr. Ulrich's opinion regarding Thrasher's limitations.  Therefore, the ALJ's

decision to assign Dr. Ulrich's opinion "no significant weight" is supported by

substantial evidence.

B.    *Dr. Kishin Gehi*

Lastly, Thrasher contends that the ALJ improperly considered the opinion

of consultative examiner Dr. Kishin Gehi ("Dr. Gehi"), who on August 14, 2009,

performed a disability determination examination and opined that Thrasher can (1)

sit for one hour, stand for 45 minutes, and walk for 30 minutes without

interruption, (2) sit for 4 hours, stand for 2 hours, and walk for 1 hour in an 8-hour

work day, (3) frequently lift and carry up to 10 pounds, occasionally lift and carry

11 - 20 pounds, and never lift or carry over 21 pounds, (4) frequently reach and

handle, finger, feel, push/pull, and climb stairs and ramps, (5) continuously

operate foot controls, (6) never kneel, crouch, crawl, or climb ladders and

scaffolds, and (7) occasionally balance and stoop.  (R. 389-391).  Dr. Gehi noted

also that Thrasher can shop, travel, ambulate without a cane, walk a block and

climb steps at a reasonable pace, use public transportation, prepare meals, care for his hygiene, and sort and handle paper files.  (R. 393).  Dr. Gehi diagnosed Thrasher with hypertension, history of hypothyroidism, arthritis involving multiple joints, and chronic obstructive airways disease secondary to cigarette use.  (R. 387).

The ALJ gave "substantial weight" to Dr. Gehi's opinion and adopted most of the limitations Dr. Gehi prescribed because his opinion was "well supported by his clinical examination and consistent with the record as a whole."  (R. 32).  For example, Dr. Gehi's examination revealed that Thrasher has a "full range of motion in all the joints," "some crepitation over his knees" and "puffiness of the joints in his fingers," and intact cranial nerves 2-12.  (R. 387).  Further, Dr. Gehi observed that Thrasher is able to stand on his toes and heels, walk with a "normal gait," and that his motor system is normal and that his sensory examination is "bilaterally symmetric and equal."  *Id*.  To the extent the ALJ adopted Dr. Gehi's opinion, the opinion is supportable and consistent with Dr. Gehi's clinical findings and the medical evidence of record.  *See* 20 C.F.R. § 404.1527(d).

Although the ALJ "substantially concur[red]" with Dr. Gehi's findings, (R. 32), the ALJ disagreed with Dr. Gehi's opinion that Thrasher can walk for only one hour a day and sit, stand, and walk for only 7 hours in a day, and found

instead that Thrasher can walk for at least 2 hours in an 8-hours work day and sit, stand, and walk for a total of 8 hours a day, *id*. The ALJ's decision to reject Dr. Gehi's limitations is supported by substantial evidence because Dr. Gehi's evaluation of Thrasher failed to reveal any significant abnormalities or restrictions in daily living. Significantly, the ALJ's rejection of Dr. Gehi's limitations is supported also by Dr. Ulrich's examinations and the objective medical evidence, including Thrasher's x-ray and bone scan. In other words, because the ALJ's RFC is consistent with the record evidence regarding Thrasher's back and knee pain, to the extent the ALJ relied on Dr. Gehi's opinion, the ALJ's decision is supported by substantial evidence. Therefore, this court finds that Thrasher failed to establish that his knee and back pain are disabling, *see* 20 C.F.R. § 416.905(a).

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Thrasher is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 31st day of August, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE